# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | NO. 18-39 |
| RONALD REESE | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                                               **October 5, 2018**

Congress mandates criminal defendants with mental illness found incompetent to stand trial must be committed by the Attorney General to a suitable facility for a reasonable period of time to evaluate whether the defendant can eventually be found competent for trial. We today study this mandate as applied to a former police officer suffering with dementia whom all parties agree is presently incompetent to understand the nature and consequences of the proceedings against him or to properly assist in his defense. The issue is what happens to him next. The presently incompetent defendant raises a procedural due process challenge to Congress' mandate relying on three doctors' opinions formed over four partial days of evaluation finding he may never be competent for trial and immediate commitment for any period of time violates his liberty interests. We agree with every court of appeals facing this issue in finding Congress' mandate affords substantial due process protections by requiring the defendant be committed for a reasonable time not exceeding four months and our extra protection requiring immediate and regular monthly reports on the defendant's prognosis while a suitable Federal Medical Center evaluates his ability to proceed to trial. We deny the defendant's motion to dismiss the indictment and grant the United States' motion for commitment in the accompanying Order.

I.  **Background**

A grand jury of this Court returned a multi-count indictment charging retired police officer Ronald Reese with mail and wire fraud and money laundering. Mr. Reese allegedly told senior citizens they won lotteries and instructed the senior citizens to pay him fees to collect the lottery winnings and then laundered the paid fees including through accounts of co-conspirators. We originally set trial for April 2, 2018 and, with the United States' consent, continued trial until August 6, 2018.[1]

After meeting Mr. Reese, his counsel expressed concern with his ability to rationally participate in his defense.[2] At a July 23, 2018 hearing on Defendant's contested motion for a second continuance, we learned Mr. Reese specifically could not remember facts, or know anything about, the charges against him. Counsel worried Mr. Reese's memory would affect his ability to participate in his own defense in preparation for and during trial.[3] Defendant's counsel moved to continue his trial until a medical professional could evaluate his competency to stand trial.[4] On July 23, 2018 we ordered Mr. Reese undergo a competency evaluation with forensic psychiatrist Dr. Pogos H. Voskanian, M.D., and extended the trial deadline to October 29, 2018.[5]

### *Dr. Voskanian's review.*

On July 24, 2018, Dr. Voskanian interviewed Mr. Reese and Ms. Tori Reese, his daughter.[6] In his report, Dr. Voskanian concluded Mr. Reese is not competent to stand trial:

> Mr. Reese's factual understanding and presentation of his understanding of legal proceedings against him was barely acceptable but notably below a level that would be expected of a former law enforcement officer. [Mr. Reese]'s ability to cooperate with his attorney is inadequate and notably below what would be expected. Therefore, at the current time, it is my opinion to a reasonable degree of medical certainty that Mr. Ronald Reese is not competent to stand trial.[7]

Mr. Voskanian also wrote:

2

[Mr. Reese]'s presentation of mental status examination could be a result of an underlying medical condition, which needs to be addressed as soon as possible. The medical assessment at the current time is more essential and can better explain changes in his mental state and personality, whether these changes can be reversed with appropriate treatment, and whether or not he can be restored to competency to stand trial.[8]

### *Dr. Cooke's review.*

Mr. Reese's counsel retained Dr. Gerald Cooke, Ph.D., a clinical and forensic psychologist, to evaluate Mr. Reese. Dr. Cooke evaluated Mr. Reese on August 3 and September 7, 2018.[9] Dr. Cooke performed a "DRS-2" test to assess whether Mr. Reese has dementia.[10] Dr. Cooke noted Mr. Reese's total score "fell into less than the first percentile range . . . [which is] considered severe impairment. Thus, the results of the DRS-2 are consistent with dementia and spell out the specific areas of his deficits and the severity of those deficits."[11]

Dr. Cooke also administered the Test of Memory Malingering ("TOMM") to determine whether Mr. Reese was feigning his memory problems. Mr. Reese scored "around [the] expectancy for those who are suffering from dementia."[12] Dr. Cooke explained this score shows "[Mr. Reese] is investing effort in memory tasks and is not malingering memory problems."[13]

Dr. Cooke also assessed Mr. Reese's understanding of the nature and consequences of his alleged crimes. Dr. Cooke wrote "[w]hat might appear to be occasional evasiveness in discussing the offense behavior with him may be a compensation for memory deficits."[14] Dr. Cooke further opined Mr. Reese's "inability to grasp the reality of what he is facing, and his severe memory deficits, compromise his ability to aid in his defense."[15]

Dr. Cooke diagnosed Mr. Reese with "Major Neurocognitive Disorder (Dementia), . . . includ[ing] possible Alzheimer's Disease and possible Vascular Neurocognitive Disorder."[16] Dr. Cooke opined "[b]ased on the cognitive testing and the interviewing around competency issues . . . Mr. Reese is incompetent to proceed legally because he lacks the ability to aid his attorney in

3

preparing a rational defense."[17] Dr. Cooke concluded "[u]nless the medical [or geriatric] evaluation indicates otherwise, the course of the illness I have diagnosed is progressive, and therefore the likelihood of him being returned to competency is minimal."[18]

### *Dr. Tomko's review.*

On August 28, 2018, Dr. Linda P. Tomko, M.D., a geriatrician at Jefferson Health, assessed Mr. Reese. After the assessment, Dr. Tomko noted Mr. Reese's "memory deficits make obtaining a detailed medical history from him difficult."[19] She noted his "current physical medical evaluation reveals a 74 year old with cognitive and memory issues."[20] Dr. Tomko concluded "Mr. Reese is not competent to help with his defense" and "has progressive dementia and his deficits will continue to worsen over time."[21]

On September 24, 2018, following Dr. Tomko's assessment, Dr. Cooke offered an addendum to his earlier report, finding "Dr. Tomko and I are in agreement that Mr. Reese suffers from dementia, that his deficits will continue to worsen over time, and that he is not competent to aid in his defense."[22]

## II. Analysis

Mr. Reese moves to dismiss the indictment arguing he is incompetent to stand trial and his competence cannot be restored. The United States opposing dismissal arguing if we find Mr. Reese incompetent to stand trial, Congress mandates we commit him to the Attorney General's custody for hospitalization under 18 U.S.C. § 4241(d) regardless of whether his competence can be restored.

We held a hearing to determine Mr. Reese's competency to stand trial. After review of the doctor's opinions, the United States admits Mr. Reese is presently not competent for trial. Mr. Reese and the United States did not offer witness testimony but presented oral argument on

4

whether we should today dismiss the indictment because – in three doctors' view – he will not recover from dementia and placing him in a federal medical facility to evaluate his present mental defect is inequitable. Mr. Reese's counsel further argues Congress' mandatory language requiring we shall commit Mr. Reese to a suitable facility for evaluation is unconstitutional as applied to Mr. Reese given his ongoing dementia.

After oral argument and careful review of detailed medical records, we deny Mr. Reese's Motion to dismiss the indictment and grant the United States' motion for detention. Mindful of the doctors' present evaluations, we allow Mr. Reese to self-report to a federal medical center and require the federal medical center to timely provide us with status reports on Mr. Reese's ongoing mental defect and competency to understand the nature and consequences of the proceedings against him or to properly assist in his defense.

### a. Mr. Reese is not competent to stand trial.

Mr. Reese argues the assessments of three medical professionals compel a finding he is incompetent to stand trial. The United States agrees Mr. Reese provides "sufficient evidence for the Court to find by a preponderance of evidence that [he] is currently mentally incompetent to stand trial."[23]

Congress defines our role in determining whether Mr. Reese is competent to stand trial:

> At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. **The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.**[24]

Congress defines the standard for competency:

5

> If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.[25]

To be competent to stand trial, Mr. Reese must "have a rational and factual understanding of the proceedings, and a 'sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding."[26]

The question is whether dementia with its inability to remember some facts but not the facts related to the charges warrants a more extensive mental health examination before deciding whether the defendant is competent for trial. With an aging population of indicted individuals, we increasingly face the challenges of memory loss and dementia. Our colleague Judge Surrick recently found a criminal defendant incompetent to stand trial when medical testing showed the defendant "suffer[ed] from dementia and [did] not presently have the adequate memory or executive functioning skills to assist her counsel in a meaningful way."[27] Our colleague in the Middle District of Pennsylvania similarly found a criminal defendant showing signs of dementia incompetent to stand trial.[28]

Mr. Reese offers three different physicians opining he is not competent to stand trial because he is unable to assist his attorney in preparing his defense due to his mental condition.[29] Dr. Voskanian found Mr. Reese incompetent to stand trial and noted Mr. Reese may have an underlying medical condition.[30] Dr. Cooke opined Mr. Reese has dementia, possible Alzheimer's disease, and possible Vascular Neurocognitive Disorder.[31] Dr. Cooke's report shows Mr. Reese's memory is severely impaired and he is likely not feigning his memory problems.[32] Concerning his ability to consult with his lawyer, Dr. Cooke wrote Mr. Reese "lacks the ability to aid his attorney in preparing a rational defense" due to cognitive impairment caused by dementia.[33] Dr.

6

Tomko noted Mr. Reese's "current physical medical evaluation reveals . . . cognitive and memory issues" and his "memory deficits make obtaining a detailed medical history from him difficult."[34]

The United States agrees "there is sufficient evidence for the Court to find by a preponderance of evidence that [Mr. Reese] is currently mentally incompetent to stand trial."[35]

As the undisputed medical evidence confirms beyond a preponderance of the evidence, Mr. Reese is unable to assist properly in his defense due to his mental condition. We find Mr. Reese is incompetent to stand trial.

### b. We must commit Mr. Reese to the Attorney General's custody.

The more difficult question arises with fairly evaluating the ability of a person suffering with dementia to ever again be able to understand the nature and consequences of the proceedings against him or properly assist in his defense. Mr. Reese argues his medical condition is permanent and he cannot improve through treatment. He argues any commitment to the Attorney General's custody for hospitalization would serve no purpose and there is no suitable facility to evaluate him. Arguing we are unable to meet the purposes of Congress' mandate, Mr. Reese argues we should dismiss the indictment against him. The United States argues once we find Mr. Reese incompetent to stand trial, we have no discretion and must commit him to the Attorney General's custody for a reasonable time in a suitable facility to more fully evaluate Mr. Reese's competence. We agree with the United States.

Congress defines the mandatory process after finding a defendant incompetent to stand trial:

> (d) Determination and disposition.—If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against

7

him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility:

(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and

(2) for an additional reasonable period of time until:

(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

(B) the pending charges against him are disposed of according to law; whichever is earlier.

If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.[36]

As we find Mr. Reese incompetent to stand trial, we must commit him to the Attorney General's custody for hospitalization under Section 4241(d).[37] The permanency of Mr. Reese's incompetence is irrelevant at this stage. Our colleague in the Middle District of Pennsylvania ordered commitment under Section 4241(d) for a defendant showing signs of dementia despite "[d]efense counsel argu[ing] at the hearing that [the defendant] should not be committed to the Attorney General . . . because his mental and physical conditions are practically untreatable and are not likely to improve."[38] While we appreciate Mr. Reese offers medical testimony from three separate professional showing irreversible symptoms of dementia, and possible Alzheimer's disease and Vascular Neurocognitive Disorder, we have no discretion to proceed otherwise under Section 4241(d).[39]

Seeking to overcome Congress' mandate requiring we commit Mr. Reese to a reasonable period of custody, Mr. Reese argues committing him under Section 4241 violates procedural due

8

process. Mr. Reese argues Congress failed to provide procedural safeguards allowing for an individualized determination commitment as the least restrictive means of achieving the statute's treatment goals. At oral argument, counsel for Mr. Reese argued Section 4241 is unconstitutional as applied because there is no "suitable facility" for treating Mr. Reese's incurable, progressive dementia.[40] The United States responded Congress did not intend treatment as the sole purpose of Section 4241(d). Rather, Congress intended to allow the United States determine for itself "whether there is a substantial probability that in the foreseeable future [Mr. Reese] will attain the capacity to permit the proceedings to go forward."[41] The United States can obtain a "more careful and accurate diagnosis" than those provided in the doctor reports during the initial competency hearing before taking the serious step of releasing a criminal defendant back into society.

The Due Process Clause of the Fifth Amendment provides "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]"[42] "Procedural due process imposes constraints on governmental decisions which deprive individuals of [a] 'liberty' [interest]."[43] Mr. Reese's confinement "implicates a liberty interest and thus may not be imposed contrary to the mandates of procedural due process."[44]

As Mr. Reese has a liberty interest, we balance three factors to determine whether Congress affords procedural due process under Section 4241(d): (1) Mr. Reese's liberty interest as affected by the statute; (2) the risk of an erroneous deprivation of such interest through the procedures used in the statute, and the probable value, if any, of additional or substitute procedural safeguards; and, (3) the Government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[45] For commitment to the Government's custody, "due process requires that the

nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."[46]

Our court of appeals has not determined whether Congress violated procedural due process with Section 4241(d)'s mandatory commitment scheme. Several other courts of appeals have faced this question and unanimously answered Congress did not violate procedural due process.[47]

In *Filippi*, the United States charged Mr. Filippi with racketeering crimes.[48] Mr. Filippi argued, and the government's psychiatrist agreed, he had vascular dementia and was not competent to stand trial.[49] The district court found him incompetent to stand trial and ordered his commitment to a federal facility no longer than four months for evaluation under Section 4241(d).[50] Mr. Filippi further argued because his dementia was irreversible and he would never be competent to stand trial, further confinement served no purpose and violated the Due Process Clause.[51]

The court found Section 4241(d) constitutional.[52] The court explained in enacting Section 4241(d), Congress satisfied the due process limitations of *Jackson v. Indiana*.[53] The Supreme Court in *Jackson* rejected a statutory scheme allowing the government to indefinitely commit a defendant to determine competency to stand trial.[54] The Supreme Court upheld commitment for a "reasonable period of time necessary to determine whether there is a substantial probability that [the defendant] will attain that capacity in the foreseeable future."[55] The court in *Filippi* found Congress satisfied the "reasonable period of time" requirement with the fourth-month limit in Section 4241(d).[56] The court also noted Congress provided flexibility for defendants' individualized circumstances, including defendants like Mr. Filippi who argue they will never be competent to stand trial. Explaining because Congress mandated hospitalization only "as is

necessary" to determine whether he could stand trial in the foreseeable future, the court explained Mr. Filippi could be released in less than four months if medical professionals determined he would never be competent to stand trial within the four-month period.[57]

In *Dalasta*, the United States indicted Mr. Dalasta for firearms violations.[58] Mr. Dalasta underwent a lobectomy to relieve his epileptic seizures.[59] Several physicians evaluated Mr. Dalasta and determined because doctors removed part of his brain during the lobectomy, he was not competent to stand trial and most likely would never be competent to stand trial.[60] Mr. Dalasta argued mandatory commitment under Section 4241(d) violated the Due Process Clause as such commitment would be detrimental to his health and futile, considering his cognitive impairment was irreversible.[61]

The court of appeals found although any commitment raises due process issues, Congress "has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill."[62] Through Section 4241, Congress created a three-step process for determining whether a defendant is incompetent to stand trial: (1) the district court initially determines whether a defendant is competent to stand trial; (2) if found incompetent, the district court commits the defendant to the Attorney General's custody for hospitalization to determine if there is a substantial probability within the foreseeable future the defendant will be competent to stand trial; (3) if there is no substantial probability of competence to stand trial within the foreseeable future, the Attorney General must find the defendant dangerous or release him back into society.[63] With this defined and limited statutory scheme, Congress complied with the Supreme Court's due process limitations in *Jackson*.[64]

In *Strong*, the United States charged Mr. Strong with assault with a dangerous weapon and assault resulting in serious bodily injury.[65] The district court found him incompetent to stand

11

trial and committed him to the Attorney General's custody for hospitalization under Section 4241(d).[66] Mr. Strong argued, similar to Mr. Reese, his commitment violated the Due Process Clause as it "mandates institutionalization of all incompetent criminal defendants for restoration without any consideration of the efficacy of such a commitment or the availability of less restrictive alternatives."[67]

The court of appeals noted the temporary commitment to the Attorney General's custody for hospitalization serves the purpose of more accurately determining whether a defendant's competency can be restored, as such a process "requires a more 'careful and accurate diagnosis' than the 'brief interviews' and 'review of medical records' that tend to characterize the initial competency proceeding."[68] The court noted the limited duration of confinement satisfied due process concerns.[69] The court also noted the courts of appeals for the First, Seventh, and Eleventh Circuits all determined Section 4241(d) is consistent with the Due Process Clause.[70]

Consistent with the reasoning from these courts of appeals, we find mandatory commitment under Section 4241(d) does not violate procedural due process. Congress mandates we commit Mr. Reese to the Attorney General's custody for hospitalization since we find him incompetent to stand trial by a preponderance of the evidence. While Mr. Reese has a liberty interest and commitment to the Attorney General's custody deprives Mr. Reese of his liberty, Congress affords Mr. Reese adequate procedural due process.

While Mr. Reese argues progressive dementia is unique, the courts of appeals in *Filippi* and *Dalasta* found Section 4241(d) constitutional applied to defendants with similarly progressive and non-restorable conditions.[71] Congress did not intend treatment as the sole purpose of commitment. While Mr. Reese presents evidence consisting of roughly four days of interviews with medical professionals, two of whom Mr. Reese selected, we note the United

States has an interest in obtaining a more careful and accurate diagnosis, above the evidence offered at the competency hearing, to determine whether Mr. Reese will ever be competent to stand trial. Confinement serves the purpose of allowing the United States to confirm Mr. Reese will not be competent to stand trial in the foreseeable future before taking the serious step of possibly releasing Mr. Reese back into society. We agree Congress concluded hospitalization provides a more accurate diagnosis than the "'brief interviews' and 'review of medical records' that tend to characterize the initial competency proceeding."[72]

Mr. Reese's confinement bears a "reasonable relation" to the purpose of carefully and accurately confirming whether Mr. Reese will ever be competent to stand trial. The risk of erroneous deprivation of Mr. Reese's liberty is low, as the Attorney General shall hospitalize Mr. Reese only "as is necessary" for no more than four months to determine whether Mr. Reese's competency to stand trial can be restored within the "foreseeable future."[73] If the Attorney General determines before or at the conclusion of the four-month period Mr. Reese will never be competent to stand trial, the United States must release him upon showing he is not a danger to others.[74] At this time, we deny Mr. Reese's motion to dismiss the indictment as Congress does not mandate dismissal under Section 4241.[75]

### III. Conclusion

We find Mr. Reese presently incompetent to stand trial. We deny Mr. Reese's motion to dismiss the indictment. We grant the United States' motion to commit Mr. Reese to the custody of the Attorney General. The Attorney General shall hospitalize Mr. Reese at a federal medical center for a reasonable period not to exceed four months from the date of his arrival at the facility, as is necessary to determine whether there is a substantial probability in the foreseeable future he will attain the capacity to stand trial. We allow Mr. Reese to self-report to the facility.

We order the United States to provide the date of hospitalization as soon as it occurs. The parties shall then provide regular reports on the progress of the evaluation by the Federal Medical Center and set a schedule for subsequent reporting on the status of the Attorney General's determination of competency to stand trial in the foreseeable future.

---

[1] ECF Doc. No. 21.

[2] ECF Doc. No. 22.

[3] ECF Doc. No. 38 at p. 2.

[4] ECF Doc. No. 22.

[5] ECF Doc. No. 26 at p. 1.

[6] ECF Doc. No. 38 at p. 2.

[7] *Id.*

[8] *Id.*

[9] *Id.* at p. 3.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at p. 4.

[17] *Id.*

¹⁸ *Id.* at Ex. B.

¹⁹ *Id.* at p. 4.

²⁰ *Id.* at Ex. C.

²¹ *Id.* at p. 4.

²² *Id.* at Ex. D.

²³ ECF Doc. No. 40 at p. 9.

²⁴ 18 U.S.C. § 4241(a) (emphasis added).

²⁵ *Id.* § 4241(d).

²⁶ *United States v. Brown*, 147 F. Supp. 3d 312, 315 (E.D. Pa. 2015) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)); *see also Taylor v. Horn*, 504 F.3d 416, 430 (3d Cir. 2007).

²⁷ *Brown*, 147 F. Supp. 3d at 326.

²⁸ *United States v. Musto*, No. 10-338, 2014 WL 47351, at *6 (M.D. Pa. Jan. 7, 2014).

²⁹ ECF Doc. No. 38 (Ex. A-D).

³⁰ *Id.* at Ex. A.

³¹ *Id.* at p. 4.

³² *Id.* at p. 3.

³³ *Id.* at p. 4.

³⁴ *Id.*

³⁵ ECF Doc. No. 40 at p. 9.

³⁶ 18 U.S.C. § 4241(d). Sections 4246 and 4248 concern determination of whether a defendant is a danger to society. If the director of the facility where the Attorney General hospitalized the defendant determines the defendant is not a danger, the facility must discharge the defendant. 18 U.S.C. §§ 4246, 4248.

³⁷ *United States v. Evans*, 704 F. Supp. 81, 84 (E.D. Pa. 1989) ("The statute provides that commitment to the custody of the Attorney General is mandatory after a finding of

incompetence."); *see also United States v. Shawar*, 865 F.2d 856, 859 (7th Cir. 1989) ("[T]he statutory scheme established by Congress clearly mandates that a defendant found to be incompetent be placed in a mental hospital for observation.").

[38] *Musto*, 2014 WL 47351, at *6 (citing *U.S. v. Ferro*, 321 F.3d 756, 757 (8th Cir. 2003) ("[S]everal other circuits have considered whether § 4241(d) requires commitment to the Attorney General upon an initial finding of incompetency, and in all cases, the courts have concluded that the statute is mandatory. . . . These courts have additionally concluded that the permanency of the defendant's condition is not before the district court.")).

[39] *United States v. Haywood*, 155 F.3d 674, 680 (3d Cir. 1998) ("Section 4241 provides a mandatory process.").

[40] 18 U.S.C. § 4241(d) ("The Attorney General shall hospitalize the defendant for treatment in a suitable facility . . . .").

[41] *Id.* § 4241(d)(1).

[42] *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quoting U.S. Const. amend. V).

[43] *Bridges v. Colvin*, 136 F. Supp. 3d 620, 649 (E.D. Pa. 2015) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)), *aff'd sub nom. Bridges v. Comm'r Soc. Sec.*, 672 F. App'x 162 (3d Cir. 2016).

[44] *United States v. Delker*, 757 F.2d 1390, 1397 (3d Cir. 1985) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)) (explaining pretrial defendant had liberty interest in challenging Bail Reform Act of 1984 on procedural due process grounds).

[45] *Holland v. Rosen*, 895 F.3d 272, 297 (3d Cir. 2018) (quoting *Eldridge*, 424 U.S. at 332) (finding the New Jersey Bail Reform Act does not violate procedural due process as it provides adequate procedural safeguards to pretrial detainees with a low risk of erroneous deprivation of pretrial liberty).

[46] *Clark v. Cohen*, 794 F.2d 79, 86 (3d Cir. 1986) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

[47] *United States v. Dalasta*, 856 F.3d 549, 551 (8th Cir. 2017); *United States v. Strong*, 489 F.3d 1055, 1063 (9th Cir. 2007); *United States v. Filippi*, 211 F.3d 649 (1st Cir. 2000); *United States v. Donofrio*, 896 F.2d 1301, 1303 (11th Cir. 1990); *Shawar*, 865 F.2d at 856.

[48] *Filippi*, 211 F.3d at 650.

[49] *Id.*

[50] *Id.*

⁵¹ *Id.*

⁵² *Id.* at 652.

⁵³ *Id.*

⁵⁴ *Jackson v. Indiana*, 406 U.S. 715 (1972).

⁵⁵ *Filippi*, 211 F.3d at 652 (quoting *Jackson*, 406 U.S. at 738).

⁵⁶ *Filippi*, 211 F.3d at 652 (noting Section 4241(d) "is self-evidently built upon *Jackson*" considering Congress borrowed language from the *Jackson* opinion and set a definite limit of four months).

⁵⁷ *Id.* (noting the district judge ordered reports from the government at 30-day intervals after ordering the defendant committed under Section 4241(d)).

⁵⁸ *Dalasta*, 856 F.3d at 551.

⁵⁹ *Id.*

⁶⁰ *Id.* at 552.

⁶¹ *Id.* at 554.

⁶² *Id.* (quoting *Addington v. Texas*, 441 U.S. 418, 426 (1979)).

⁶³ *Dalasta*, 856 F.3d at 554.

⁶⁴ *Id.* (quoting *Jackson*, 406 U.S. at 738).

⁶⁵ *Strong*, 489 F.3d at 1057.

⁶⁶ *Id.*

⁶⁷ *Id.* at 1060 (citing *Reno v. Flores*, 507 U.S. 292, 346 (1993) ("[T]he right to be free from Government confinement . . . is the very essence of the liberty protected by the Due Process Clause.")).

⁶⁸ *Strong*, 489 F.3d at 1062 (quoting *Ferro*, 321 F.3d at 762).

⁶⁹ *Strong*, 489 F.3d at 1062 (noting Section 4241(d) mandates confinement for a period "not to exceed four months" to determine whether the defendant will be competent to stand trial in the foreseeable future).

[70] *Id.* at 1063.

[71] *Filippi*, 211 F.3d at 652 (vascular dementia); *Dalasta*, 856 F.3d at 554 (removal of the left temporal lobe of the defendant's brain).

[72] *Strong*, 489 F.3d at 1062 (quoting *Ferro*, 321 F.3d at 762).

[73] 18 U.S.C. § 4241(d).

[74] *United States v. Peppi*, No. 06-157, 2007 WL 674746, at *1 (D.N.J. Feb. 28, 2007) (explaining if the defendant cannot improve to stand trial and is not a danger to others, defendant subject to "immediate release or conditional release under a prescribed regimen of treatment" (quoting 18 U.S.C. § 4246)); *see also United States v. Foy*, 803 F.3d 128, 138 (3d Cir. 2015) ("[W]hen a detainee is no longer dangerous under a prescribed regimen of medical care, the director of the detaining facility must initiate a discharge procedure with the district court [under] 18 U.S.C. § 4246(e)[.]").

[75] *Peppi*, 2007 WL 674746, at *4 (citing *United States v. Ecker*, 78 F.3d 726, 729 (1st Cir. 1996)) ("[T]his Court agrees that the prosecutors are not required by 18 U.S.C. §§ 4241 and 4246 to dismiss their indictment[.]").